IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

CALIFORNIA CASUALTY GENERAL )
INSURANCE COMPANY OF OREGON,)
)
        Plaintiff, )
)
vs. ) Case No. 14-0607-CV-W-ODS
)
MATTHEW NELSON, et al., )
)
        Defendants. )

<u>ORDER AND OPINION GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Pending is Plaintiff's Motion for Summary Judgment. The motion (Doc. # 11) is granted as to all Defendants.

<u>I. BACKGROUND</u>

Plaintiff initiated this declaratory judgment action against

1. K.B., in her individual capacity and as the mother of and next friend for R.B,
2. R.B., and
3. Matthew Nelson.

The Motion for Summary Judgment was filed on August 12, 2014. By that time, Nelson had filed an Answer. Also on August 12, Plaintiff filed a Return of Service indicating K.B. had been served in both her individual and representative capacity on July 28. On August 28, an Answer was filed. This Answer appears as Document 15 on the Docket Sheet and is identified as the "Answer of Defendant K.B. to Plaintiff's Complaint for Decla[r]atory Judgment Answer to Complaint, on behalf of R.B." The document itself is entitled "Answer of Defendant K.B." but the first sentence of the Answer states it is filed by "Defendant R.B., a minor, by and through his biological Parent and Next Friend, K.B., and K.B., individually . . . ." The Court construes this Answer to have been filed by both K.B. and R.B.

Nelson opposed the summary judgment motion, but K.B. and R.B. did not and the time for doing so expired. Thereafter, on September 8, 2014 Plaintiff filed Reply Suggestions in support of the Motion for Summary Judgment; since then, K.B. and R.B. still have not responded to the Motion for Summary Judgment. The Court deems the motion to be fully briefed and ripe for consideration.

This case involves a suit filed by K.B. (individually and in her capacity as R.B.'s mother) against Nelson in Jackson County Circuit Court. K.B.'s suit alleges Nelson was a third grade teacher in the Grain Valley School District ("the School District") during the 2008-09 school year and R.B. was one of Nelson's students. Petition, ¶¶ 25-26.[1] Nelson pleaded guilty in state court to child molestation, statutory sodomy and attempted child molestation; at least some of these charges arose from his conduct regarding R.B. K.B.'s suit asserts claims against Nelson, the School District, and various officials from the School District.

Nelson was insured under a homeowner's insurance policy issued by Plaintiff. Plaintiff has been defending Nelson under a reservation of rights, preserving its ability to contest its obligations to defend or indemnify him. In this suit, Plaintiff seeks a declaration that (1) it has no duty to defend Nelson in the state suit and (2) it has no duty to indemnify Nelson from any judgment that might be imposed in the state suit.

## A. The Underlying State Court Suit

The Petition filed by K.B. in state court ("the Petition") remains the operative pleading in that lawsuit. As relevant to this suit, the General Allegations Regarding Facts Common to All Counts ("the Common Facts") aver the following facts:

> 26. Plaintiff R.B. was assigned to defendant Nelson's class for the 2008 – 2009 academic year.
>
> 27. At all times relevant herein, defendant Nelson was plaintiff R.B.'s teacher and held a position of authority and control over him, and owed him a fiduciary duty.

---

[1]The Petition cited here is K.B.'s state court petition filed in the underlying state court suit.

2

> 28. During the aforementioned school year, defendant Nelson inappropriately and unlawfully touched plaintiff R.B. in a sexual manner during school hours and on school property. During the aforementioned school year, Defendant Nelson inappropriately and unlawfully touched plaintiff on numerous occasions. . . .
>
> \* \* \*
>
> 30. During the 2008-2009 school year, while plaintiff R.B. was a student at Prairie Branch, and assigned . . . to defendant Nelson's third grade class[,] defendant Nelson began an ongoing, repeated and continuous practice of fondling, holding, kissing and otherwise inappropriately touching and assaulting plaintiff R.B., including hugging and touching his private area under and above his clothing and also requiring R.B. to sit and snuggle on the teacher's lap during class time. The aforementioned conduct also continued periodically through the 2009-2010 school year and 2010-2011 school years in Nelsons [sic] capacity as faculty representative of the student council and his role as R.B.'s "buddy teacher" . . . .

Several other paragraphs in the Common Facts describe Nelson's conduct as constituting assaultive conduct generally or sexual misconduct specifically. Some representative examples include:

- Paragraph 29, which describes the effects of "defendant Nelson's ongoing practice of touching, rubbing, and fondling plaintiff R.B."
- Paragraph 31, which alleges R.B. was "subjected to [Nelson's] repeated and ongoing physical and sexual assaults."
- Paragraph 55, which describes changes in R.B. "[e]ver since defendant Nelson's repeated sexual assaults and contact with plaintiff R.B. . . . ."
- Paragraph 58, which also describes changes in R.B. "[s]ince defendant Nelson's repeated sexual assaults and contact with plaintiff R.B. . . . ."
- Paragraph 59, which describes changes in R.B. attributable to "the sexual harassment, assault and battery plaintiff R.B. suffered at the hands of defendant Nelson while on school property . . . ."

The Petition contains fourteen counts, but Count XIV does not assert a cause of action and only seeks punitive damages for all the other counts. Disregarding Count XIV, Nelson is a defendant in ten counts. Each of the individual counts begins by reincorporating all previous allegations, including paragraphs 28 and 30. The counts naming Nelson as a defendant, and relevant allegations contained therein, are as follows:

3

Count I – Sexual Harassment in violation of the Missouri Human Rights Act. In addition to incorporating the Common Facts set forth above, Count I alleges "R.B. was subjected to sexual harassment and sexual assault and battery by a teacher while attending school, during school hours and on school premises." Petition, ¶ 85.

Count IV – Negligence Per Se. This count is premised on Nelson's failure to report, as required by section 167.117 of the Revised Missouri statutes, his own prior acts of sexual assault. Petition, ¶¶ 120, 124. The statute requires school officials to report acts of sexual assault committed against pupils or school employees. Nelson's failure to report his prior sexual assaults is alleged to be the direct and proximate cause of the injuries R.B. suffered as a result of the acts described in the Common Facts. Petition, ¶ 125.

Count VI – Negligence. Here, the Petition alleges Nelson breached his duty to use the ordinary degree of skill and care employed by reasonable or careful teachers by engaging in the acts described in the Common Facts. Petition, ¶¶ 139-41.

Count VII – Negligent Infliction of Emotional Distress. This Count incorporates the Common Facts as well as the duties alleged elsewhere in the Petition. In addition, this count alleges that Nelson "knew or should have known that continuous sexual abuse by a teacher involved an unreasonable risk of causing emotional distress for plaintiff R.B." Petition, ¶ 149.

Count VIII – Assault and Battery. This count incorporates the Common Facts and further posits that the conduct described therein "caus[ed] the immediate apprehension of physical contact in plaintiff R.B." and constituted "offensive and/or harmful physical contact with plaintiff R.B." Petition, ¶¶ 155-56.

Count IX – Childhood sexual abuse brought pursuant to section 537.046 of the Revised Missouri Statutes. This statute creates a cause of action for anyone under the age of eighteen who is the victim of an act that violates various criminal provisions specified in the statute. In this case, Count VIII specifies that it is based on section

4

566.086, which defines the crime of sexual contact with a student. The crime occurs if a teacher has sexual contact with a student of a public school.[2]

Count X – Negligent infliction of emotional distress, brought by K.B. only. This count alleges Nelson owed a duty to K.B. to protect her child "from unreasonable risks of harm" and that he breached this duty "when he sexually abused her son." Petition, ¶¶ 171, 173.

Count XI – Breach of duty to provide aid. This count alleges "Nelson, by reason of his original tortious conduct had a duty to exercise reasonable and ordinary care to prevent further harm to" R.B. Petition, ¶ 179. The claim's theory is that having engaged in sexual misconduct that harmed R.B., Nelson had a duty to disclose and report his sexual misconduct so that R.B. could get treatment.

Count XII – Invasion of Privacy. This count alleges that as a student R.B. had a right to study at his desk and be left alone, but Nelson violated this right by "having [R.B] sit on his lap which included an inappropriate touching of plaintiff . . . ." Petition, ¶ 187.

Count XIII – False Imprisonment. After incorporating the Common Facts, this count alleges "Nelson unlawfully and involuntarily detained and restrained plaintiff R.B. against his will." Petition, ¶ 192.

B. The Insurance Policy

1. The "Main" Policy

Coverage E of the policy agrees to pay the limit of liability for damages for which Nelson is legally liable in the event "a claim or a suit is brought against" Nelson "for damages because of 'bodily injury' caused by an 'occurrence' . . . ." Coverage F states Plaintiff "will pay the necessary medical expenses" arising from "an accident causing 'bodily injury'" that are (among other things) "caused by the activities of an 'insured.'" Elsewhere, the policy defines an "occurrence" as "an accident . . . which results, during

---

[2] Section 566.086 is not one of the statutes specified in section 537.046, so it may be that it cannot form the basis for a claim of childhood sexual abuse. The legal viability of Count IX is not an issue before this Court.

5

the policy period, in" bodily injury or property damage. For the sake of argument, the Court will accept that the Petition alleges Nelson caused bodily injury arising from an "occurrence."

A list of exclusions immediately follow Coverages E and F. Three exclusions are relevant to this suit: [3]

- Exclusion E.1 states that Coverages E and F do not apply to "'[b]odily injury' or 'property damage' which is expected or intended by an 'insured' even if the resulting 'bodily injury' or 'property damage' [i]s of a different kind, quality, or degree than initially expected or intended; or [i]s sustained by a different person . . . than initially expected or intended."

- Exclusion E.2 excludes coverage for damages "arising out of or in connection with a 'business' . . . engaged in by an 'insured', whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured'." Elsewhere, the policy defines a "business" to mean "[a] trade, profession or occupation engaged in on a full-time, part-time or occasional basis."

- Exclusion E.7 states that Coverages E and F do not apply to "'[b]odily injury . . . arising out of sexual molestation, corporal punishment or physical or mental abuse . . . ."

### 2. The Educator Endorsement

The policy contains an endorsement providing excess liability coverage that extends Coverages E and F to "acts and omissions within the course and scope of [Nelson's] employment" as a teacher. As this provides excess coverage, the endorsement specifies that for its coverage to be triggered Nelson "must be covered by collectible underlying primary insurance." If the endorsement's conditions are met, it effectively amends Exclusion E.2 (discussed above) by declaring that Exclusion E.2 does not apply to any damages "arising out of or in connection with [Nelson's] employment by a 'school'."

---

[3]There is also an endorsement excluding coverage for punitive damages, but there is no need to discuss this exclusion in light of the Court's ruling in this matter.

The endorsement incorporates the other previously-mentioned exclusions. Some of them are modified, but not in ways that matter to this suit. The endorsement also has some additional exclusions, one of which is relevant here: the endorsement does not apply to any "criminal act(s) or any acts forbidden by statute or local school board policy."

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### A.

Plaintiff's suit involves two distinct duties an insurer owes to its insured: the duty to defend and the duty to indemnify. "The duty to defend is broader than the duty to indemnify." McCormack Baron Mgt. Servs., Inc. v. American Guarantee & Liability Ins.

Co., 989 S.W.2d 168, 170 (Mo. 1999) (en banc). "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 542 (8th Cir. 2012) (quoting McCormack Baron, 989 S.W.2d at 170-71). In addition, the insurer is charged with knowledge of facts that demonstrate the possibility of coverage if those facts are known or are reasonably ascertainable. E.g., Truck Ins. Exchange v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005); Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 210 (Mo. Ct. App. 1995). "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." Kirk v. Continental Western Ins. Co., 123 S.W.3d 259, 264 (Mo. Ct. App. 2003) (citing McCormack Baron, 989 S.W.2d at 170) (emphasis supplied); see also Brand v. Kansas City Gastroenterology & Hepatology, LLC, 414 S.W.3d 546 , 552-53 (Mo. Ct. App. 2013). If there is any possibility of coverage – no matter how unlikely that possibility may be – the duty to defend persists.

"The duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." McCormack Baron, 989 S.W.2d at 173. However, as the duty to defend is broader than the duty to indemnify, there can be no duty to indemnify if there is no duty to defend. E.g., Brand, 414 S.W.3d at 556; King, 123 S.W.3d at 264; American States Ins. Co. v. Herman C. Kempker Const. Co., 71 S.W.3d 232, 236 (Mo. Ct. App. 2002); Superior Equipment Co. v. Maryland Casualty Co., 986 S.W.2d 477, 484-85 (Mo. Ct. App. 1998).

In considering the parties' competing arguments, the Court is mindful that the insured bears the burden of proving coverage exists, while the insurer bears the burden of proving that an exclusion from coverage applies. E.g., Interstate Bakeries, 686 F.3d at 543.

The Court starts by noting the Petition's general allegations, particularly those contained in paragraphs 28 and 30. Both of these paragraphs describe intentional sexual misconduct. Paragraph 28 accuses Nelson of inappropriately and unlawfully

touching R.B. "in a sexual manner during school hours and on school property." Paragraph 30 alleges Nelson had an "ongoing, repeated and continuous practice of fondling, holding, kissing and otherwise inappropriately touching and assaulting plaintiff R.B." and that this practice included hugging and touching R.B.'s private area and "requiring R.B. to sit and snuggle on the teacher's lap during class time." Other paragraphs reinforce these allegations by characterizing Nelson's conduct as assaultive or sexual misconduct. These factual allegations describe conduct that is excluded from coverage. While damages arising from this conduct would constitute "bodily injury" arising from an "occurrence," coverage is excluded (1) by Exclusion E.1 because such bodily injury would be expected and (2) by Exclusion E.7 because the "bodily injury" arises from "sexual molestation . . . or physical or mental abuse."

In carrying its burden of demonstrating the Exclusion E.1 applies, Plaintiff need not demonstrate that Nelson "desired the particular result. It is sufficient that the consequences were substantially certain to follow from what [Nelson] intentionally did." State Farm Fire & Cas. Co. v. D.T.S., 867 S.W.2d 642, 644 (Mo. Ct. App. 1993); see also Cameron Mut. Ins. Co. v. Moll, 50 S.W.3d 329, 333 (Mo. Ct. App. 2001) ("an insured's subjective intent to cause injury can still be inferred from the nature and circumstances of the insured's intentional acts, especially when an intentional act results in injuries which are the natural and probable consequence of such an act."). Nelson's attempt to suggest ambiguity over whose perspective is applicable is unavailing: "an intent to harm [by the insured] is inferred from the very nature of the act of sexual abuse of a child. . . . The intent to molest is, by itself, the same thing as intent to harm." M.A.B. v. Nicely, 911 S.W.2d 313, 316 (Mo. Ct. App. 1995) (quotation omitted); see also D.T.S., 867 S.W.2d at 644. Nelson suggests the state court jury might find Nelson did not intend to injure R.B. or K.B., but the intent to injure is inferred as a matter of law. B.B. v. Continental Ins. Co., 8 F.3d 1288, 1290-91, 1296 (8th Cir. 1993) (holding the exclusion for injuries "intended or expected" applied even though trial court found the insured "subjectively did not intend to injure or harm" the minor victim). In fact, by 1997 Missouri courts were describing it as "well settled that sexual molestation is an intentional act falling within the 'intended or expected' exclusion in

9

general liability insurance cases." American Family Mitual Ins. Co. v. Copeland-Williams, 941 S.W.2d 625, 628 (Mo. Ct. App. 1997).

The Court also notes Exclusion E.2 applies and precludes Plaintiff's obligation to defend Nelson. Nelson's position as a teacher qualified as a business within the meaning of the policy because teaching is a "trade, profession or occupation." The Petition makes it abundantly clear that the damages sought arose out of or were in connection with Nelson's business as a teacher because it is replete with references to the fact that the torts occurred at the school, during school hours, and occurred because of Nelson's position as a teacher. Indeed, many of Plaintiff's causes of action depend on the fact that Nelson was a teacher.

B.

Examining the Petition count by count does not alter these conclusions. In conducting a count-by-count inquiry, it must be remembered that each count reincorporates the Common Facts. Thus, each count reincorporates the allegations (1) describing Nelson's intentional and sexual acts and (2) establishing that the torts occurred during and in connection with Nelson's job as a teacher.

Sexual Harassment (Count I) – The Common Facts demonstrate there can be no coverage for this claim because all three exceptions discussed above apply.

Negligence per se (Count IV) – The Petition alleges that a violation of the duty to report as required by section 167.117 can give rise to a negligence claim. This may be, and the Court expresses no opinion as to the claim's legal viability because that is not an issue before the Court. The real question is whether there is a possibility the claim might be covered by the policy, and the answer to this question is "no." The alleged duty was triggered by the Nelson's initial sexual misconduct committed before he did anything to R.B. Moreover, the damages R.B. suffered arise from Nelson's ensuing intentional acts – which also involved conduct that was (1) intentional and (2) sexual. Moreover, the failure to report the ensuing misconduct occurred within the scope of Nelson's duties as a teacher; this is established not only by the Common Facts but also because section 167.117 applies to Nelson only because he was a teacher. For these

10

reasons, all three exceptions apply and conclusively demonstrate coverage cannot exist.

Negligence (Count VI) – This count also specifically reincorporates the Common Facts described earlier. Defendants place great emphasis on the fact that this claim asserts a claim for negligence. However, Missouri courts would not rely on the label asserted but instead would look to the factual allegations supporting the claim. Simply titling a claim as one for "negligence" will not avoid the inescapable conclusion that the claim arises from intentional/sexual misconduct. "A petition's mere mention of the word, 'negligence,' does not trigger a duty to defend where the factual allegations forming the 'negligence' claim demonstrate intentional conduct." Brand, 414 S.W.3d at 553; see also K.G. v. R.T.R., 918 S.W.2d 795 (Mo. 1996) (en banc).[4] The allegations supporting Count VI – including the Common Facts – "'contradict any possibility that [Nelson's] conduct was mere negligence.'" State Farm Fire & Cas. Co. v. Caley, 936 S.W.2d 250, 254 (Mo. Ct. App. 1997) (quoting K.G., 918 S.W.2d at 800); see also Trainwreck West Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 44-45 (Mo. Ct. App. 2007).

Separate and apart from this conclusion, coverage is also excluded because Count VI asserts Nelson violated duties owed in his capacity as a teacher. Petition, ¶ 139. This clearly asserts a claim arising from Nelson's business as defined in Exclusion E.2.

Negligent Infliction of Emotional Distress (Count VII) – The Court's discussion regarding Count VI applies in this context as well; merely labeling this claim as one for "negligence" does not allow it to automatically evade the policy's exclusions. In addition, K.B.'s attempt to "divide" the emotional distress component from the claims that Nelson acted intentionally (as Count VII alleges in paragraph 149) is not allowed under Missouri law. E.g., Caley, 936 S.W.2d at 253-54 (rejecting "argument that even

---

[4] In K.G., the plaintiff filed suit against her father alleging he touched her offensively/sexually when she was a child. The claim for battery was time-barred, so the plaintiff filed a claim for negligent infliction of emotional harm in an attempt to take advantage of the longer limitation period for negligence claims. The Missouri Supreme Court rejected the attempt, holding the "allegations of the pleadings before this Court do not support a claim that the father acted negligently."

11

though [defendant's] conduct was intentional, it simply constituted negligent and not intentional infliction of emotional distress . . . .").

Assault and Battery (Count VIII) – The Court's preceding discussions explains why this count is excluded, particularly under Exclusions E.1 and E.7. Even if Nelson committed some "non-sexual" assaults or batteries, Exclusion E.1 would apply. Finally, the Petition alleges all of Nelson's conduct occurred in his capacity as a teacher, so Exclusion E.2 applies.

Childhood Sexual Abuse (Count IX) – The Court's preceding discussion explains why this claim is excluded, particularly under Exclusions E.1 and E.7. Exclusion E.2 also applies because Count IX is predicated on section 566.086 of the Revised Missouri Statutes, which criminalizes a teacher's sexual contact with a student.

Negligent Infliction of Emotional Distress (Count X) – The Court's discussion regarding Counts VI and VII applies in this context as well. More importantly, Count X specifically alleges that Nelson's duty was breached "when he sexually abused [K.B.'s] son," Petition, ¶ 172, so there can be no doubt that the claim involves bodily injury that was intended or that it arises from sexual misconduct. The analysis is not altered by the fact that this claim is brought by K.B. and not R.B. In addition, Count X specifically relies on duties Nelson allegedly owed K.B. because he was R.B.'s teacher, Petition, ¶¶ 170-71, so Exclusion E.2 applies as well.

Duty to Provide Aid After Causing Harm (Count XI) – The gravamen of this claim is that after sexually assaulting R.B., Nelson owed a duty to provide assistance. The claim arises from Nelson's intentional/sexual acts, so this claim is excluded by Exclusions E.1 and E.7.

Invasion of Privacy (Count XII) – The Petition alleges Nelson invaded R.B.'s privacy by engaging in intentional acts, so Exclusion E.1 applies. Those intentional acts were sexual in nature, so Exclusion E.7 applies. Finally, the privacy invaded arose from R.B.'s status as a student, was invaded at school, and was invaded by virtue of Nelson's status as a teacher – so Exclusion E.2 applies.

False Imprisonment (Count XIII) – Exclusion E.1 plainly applies given that this claim is an intentional tort. Finally, as with all of the other claims, the Petition's allegations demonstrate Exclusion E.2 applies as well.

12

## C.

The Court's discussion to this point has focused on the policy's general provisions. The Educator Endorsement differs from the main policy in three important respects. First, it effectively removes Exclusion E.2. Second, it contains some additional provisions that function as exclusions. Third, it bestows only excess coverage, and it applies only if Nelson is "covered by collectible underlying primary insurance."

The last difference is critical because the Educator Endorsement cannot provide coverage because Nelson is not covered by collectible underlying primary insurance. There is no indication any other coverage exists.

Even if other coverage existed, the Educator Endorsement would not provide coverage because of Exclusions E.1 and E.7; the Court's prior discussion applies in this context as well. Finally, coverage under the Educator Endorsement for Counts I, IV, VIII, IX, XII, and XIII are barred by the additional provisions dictating that the Educator Endorsement does not apply to "bodily injury" arising from "criminal act(s) or any acts forbidden by statute or local school board policy."

## III. CONCLUSION

Given the Petition's allegations, there is no possibility of coverage. Missouri courts would look through the labels and recognize that K.B. asserts claims predicated on Nelson's sexual misconduct and the more general assertion that he caused damage based on his intentional acts. A plaintiff's ability to plead in the alternative does not alter this conclusion, because none of the allegations suggest anything other than intentional conduct. There is no possibility that a jury will return a verdict that Nelson acted negligently: even if the jury does not categorize his actions as involving sexual misconduct, it can only conclude that he acted intentionally or not at all. In addition, the Petition alleges that all of Nelson's misconduct occurred in and in connection with his profession as a teacher, which provides an independent basis for excluding coverage

13

pursuant to Exclusion E.2.  Finally, as there is no possibility of coverage, there is no duty to defend or indemnify.

      Plaintiff's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

                                      /s/ Ortrie D. Smith
                                      ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 2, 2014                UNITED STATES DISTRICT COURT